Case 4:22-cv-01126   Document 48   Filed on 06/06/23 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
June 06, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL HOOD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-22-1126 |
| | § | |
| GULF CAPITAL BANK, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Michael Hood sued his former employer, Gulf Capital Bank, Inc., along with nine individual Gulf Capital employees. Hood also sued multiple entities related to Insperity, Inc.,[1] which he alleges acted as Gulf Capital's human resources department. Hood alleges discrimination on the basis of his race (Black) and disabilities (gastrointestinal issues, depression, anxiety, and ADHD), in violation of the Texas Commission on Human Rights Act, Title VII of the Civil Rights Act, and the Americans with Disabilities Act. Hood represents himself.

In July 2022, the defendants all moved to dismiss Hood's First Amended Complaint. (Docket Entry Nos. 14, 15). The motions were granted. (Docket Entry No. 22). The court dismissed the claims against the individual employees, with prejudice, because the applicable statutes do not authorize claims against individuals. (Docket Entry No. 22 at 5). The court also dismissed the claims against Gulf Capital and the Insperity Defendants because Hood failed to state a claim of race discrimination, disability discrimination, or retaliation against these defendants. (Docket Entry No. 22 at 5–8). The claims against Gulf Capital and the Insperity

---

[1] The "Insperity Defendants" are Insperity, Inc., Insperity Holdings, Inc., Insperity Enterprises, Inc., Insperity PEO Services, L.P., Insperity Business Services, L.P., and Insperity Payroll Services, L.L.C.

Defendants were dismissed without prejudice and with an opportunity for Hood to amend his complaint as to those defendants. (Docket Entry No. 22 at 8–9). Hood did so, filing his Second Amended Complaint. (Docket Entry No. 28).

Gulf Capital and the Insperity Defendants separately moved to dismiss the Second Amended Complaint, arguing that it suffers from the same defects as the first. (Docket Entry Nos. 30, 31). Hood then filed a motion for leave to file a Third Amended Complaint. (Docket Entry No. 36). The defendants jointly responded to Hood's motion for leave to amend on December 8, 2022. (Docket Entry No. 38). Under this court's local rules, a movant may file a reply brief "within 7 days [of] the date the response [is] filed." S.D. TEX. LOC. R. 7.4(e). Hood filed his reply opposing the defendants' response to his motion for leave to file a Third Amended Complaint on December 30, 2022. The defendants then moved to strike or, in the alternative, respond to the untimely reply brief. (Docket Entry No. 40). Hood then filed a motion to compel discovery, (Docket Entry No. 42), and another motion for leave to file a Third Amended Complaint and to add more defendants, (Docket Entry No. 43). The defendants jointly moved to strike that filing and for an order to suspend further filings from Hood without leave of court. (Docket Entry No. 44).

Having considered the motions, the amended complaint, and the applicable law, the court now issues the following rulings:

- The Insperity Defendants' motion to dismiss, (Docket Entry No. 30), is granted, with prejudice and without leave to amend because amendment would be futile.

- Gulf Capital's motion to dismiss, (Docket Entry No. 31), is granted, with prejudice and without leave to amend because amendment would be futile.

- Hood's two motions for leave to file a third amended complaint, (Docket Entry Nos. 36, 43), are denied because amendment would be futile.

2

- The remaining motions, (Docket Entry Nos. 40, 42, 44), are denied as moot.

Final judgment will be entered separately. The reasons are explained below.

**I.     Background**

Hood, a Black man, worked for Gulf Capital Bank as a Senior Relationship Manager from June 15, 2020, until he was fired on August 20, 2021. (Docket Entry No. 28 ¶¶ 9–10). Hood states that he has depression, anxiety, ADHD, and gastrointestinal issues. He alleges that he was the target of workplace discrimination on the basis of his race and disabilities.

Hood alleges that in August 2020, James Edward Jones, the Chairman and Chief Executive Officer of Gulf Capital, made a comment that led Hood to believe that Jones was racist. Specifically, Hood alleges that Jones described himself as "a slave driver." (*Id.* ¶ 11). Hood also alludes to an earlier lawsuit he filed against a former employer. (*Id.* ¶ 18). Hood alleges that this earlier lawsuit was the catalyst for the allegedly discriminatory treatment towards him at Gulf Capital. (*Id.* ¶ 19). Hood alleges that on November 25, 2020, Homeyer, after seeing coverage of the earlier lawsuit in the newspaper, "immediately phoned Hood berating him that they meet face to face at the soonest [*sic*] to discuss the lawsuit." (*Id.* ¶ 20). This earlier suit apparently involved a "banker friend" of Homeyer's. (*Id.* ¶ 25).

About a year later, in August 2021, Hood alleges that Jones described Hood as "unusual and weird," "the only one," and "unlike" any other banker, and on one occasion said that he was talking "'stern'" towards Hood. (*Id.* ¶¶ 15, 30, 41). Hood also alleges that Jones called Hood "hangry" and told him to "eat lunch downstairs" in an onsite deli. (*Id.* ¶¶ 38–39). Hood also alleges that Jones criticized him for not wearing a suit jacket to work, (*id.* ¶ 16), while a white, female employee was allowed to wear flip flops. Hood also alleges that Jones told him to use the

back door to enter the office building, (*id.* ¶ 44), which other employees also used. Hood asserts that he viewed all these exchanges as racist.

Hood states in his complaint that he understood each of these comments to be racially motivated because he was "the only black male banker" at Gulf Capital. (*Id.* ¶ 30). Hood states that these comments made him feel as if he had been "banish[ed]" to "slave quarters" and invoked stereotypes of an "angry" or "uppity" Black man. (*Id.* ¶¶ 38, 40). Hood alleges that the effect of these statements was to "mak[e] it clear that as slave master Jones was keeping a keen eye on Hood to a degree that he was not subjecting to any other white, non-disabled Bank employee." (*Id.* ¶ 15).

Hood also alleges racially discriminatory remarks by Bank President Jonathan Homeyer. Homeyer told Hood that a white, employee, Stan Grisham, had said that Hood was unprofessional. (*Id.* ¶ 26). Hood then told Homeyer that Grisham was the unprofessional employee, and that Grisham told Hood that Hood "walk[s] around here like [he's] king of the world." (*Id.* ¶ 26). Hood considered this a racist insult.

The timeline for the events Hood alleges as to his disability discrimination claim is unclear. It appears that Hood may have indicated that he had some unspecified medical conditions, on an unspecified date before August 17, 2021. On August 17, 2021, the complaint is clear that Hood told Homeyer that he had specifically been diagnosed with depression, generalized anxiety disorder, and ADHD, and that "gastrointestinal disease also played a deleterious role in his overall health." (*Id.* ¶ 12–13, 22). Also on August 17, 2021, Hood alleges that he told Homeyer that he would need a medical accommodation to work from home. (*Id.* 23). The complaint is not clear which medical condition necessitated that accommodation or whether that accommodation would be temporary or long term. In any event, the Bank allowed Hood to work from home, which he did on August 18, 2021. (*Id.* ¶ 29). Hood returned to the office on August 19, 2021, and attempted

4

to leave at 2:15 p.m., but Jones asked Hood where he was going and the two appear to have gotten argument, with Hood telling Jones that an "evil spirit" had overtaken Jones. (*Id.* ¶ 30–31). Immediately after, Jones called a meeting with Hood, Homeyer, Joel Baumbach (the Chief of Human Resources), and Camille Bayer (Jones's assistant). (*Id.* ¶ 34). The meeting appears to have started with management attempting to understand what accommodations Hood would need but ended with Hood accusing the Bank of committing fraud. (*Id.*).

Baumbach called Hood after the meeting and asked Hood to take the following day off and not return to the office. (*Id.* ¶ 48). Hood then called Homeyer and Baumbach complaining that Jones had "verbally abused him without provocation." (*Id.* ¶ 49). Hood alleges that Baumbach "threatened Mr. Hood's family if Mr. Hood continued to seek redress for the verbal abuse and other harassment." (*Id.*). On August 20, 2021, Gulf Capital fired Hood. (*Id.* ¶ 51).

After he was fired, Hood alleges that the Bank failed to send him some personal notebooks and sent him some items that he did not own. (*Id.* ¶ 55). Hood also alleges that the Bank's counsel sent Hood a "notebook containing racist cartoon drawings" that was purportedly found at Hood's workstation, eight months after Hood's termination. (*Id.* ¶ 56).

**II.      The Legal Standards**

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).

A court may "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re Sec. Litig. BMC Software, Inc.*, 183 F.Supp.2d 860, 882 (S.D. Tex. 2001) (internal quotation marks omitted). Consideration of documents attached to a defendant's motion to dismiss is limited to "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M. Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). The court may consider these extrinsic materials without converting to a summary judgment motion. *See Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366).

When a complaint fails to state a claim, the court should generally give the plaintiff a chance to amend before dismissing the action with prejudice, unless amendment would be futile. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Amendment is futile if an amended complaint would still fail to state a claim. *See Mandujano v.*

6

*City of Pharr, Texas*, 786 F. App'x 434, 438 (5th Cir. 2019); *Bernegger v. Dep't of Revenue*, 785 F. App'x 209, 211 n.1 (5th Cir. 2019).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting reference omitted).

**III.    Analysis**

Hood alleges race discrimination under Title VII of the Civil Rights Act and the Texas Commission on Human Rights Act. To state a claim for race discrimination under either, Hood must allege that he: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004); *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019).

In ruling on the motions to dismiss the First Amended Complaint, the court explained that Hood did not allege that he was replaced by an employee outside his protected group, leaving the disparate treatment claim. The "ultimate question" in a Title VII disparate treatment claim is "whether a defendant took the adverse employment action against a plaintiff *because of* [his] protected status." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (quoting reference omitted). In the First Amended Complaint, Hood alleged that because Jones told him to eat in the cafeteria, wear a suit jacket, use the back entrance, and not leave work early on a particular day, Jones acted in a racially discriminatory manner. The court held that Hood's allegations were insufficient to state a claim because he did not allege facts showing that non-Black employees

were treated differently or that he was fired because of his race. (Docket Entry No. 22). The court gave Hood an opportunity to amend.

Hood's Second Amended Complaint is largely identical to his first in its allegations of race discrimination. The additions are, for the most part, conclusory. *See, e.g.*, (Docket Entry No. 28 at ¶ 25) ("This is clear evidence that Jones singled out Hood as the Bank's only black male employee with a disability with such immature but vitriolic racially-based descriptions such as "weird" and "unusual" and "no one else does that."). The Second Amended Complaint suffers from the same defects as the first.

As an initial matter, Hood has not alleged facts showing that the statements he challenges were discriminatory. Comments about not wearing a suit jacket and leaving work early are race neutral. Jones's statements that Hood was "unusual and weird," "unlike" other bankers, or "the only one," while perhaps offensive, are not discriminatory. While Hood perceived those remarks as related to his status as a Black man, "an employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief." *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 553 (S.D. Tex. 1999), *aff'd*, 224 F.3d 765 (5th Cir. 2000).

Additionally, Hood's Second Amended Complaint still does not allege that non-Black employees similarly situated by job and responsibilities were treated more favorably. Although Hood suggests that dress code standards were not the same, the example Hood gives of a woman in a different position wearing flip flops does not represent a similarly situated employee or more favorable treatment. Other employees also used the back entrance. And the fact that the CEO left early is not evidence that Hood, who is not the CEO, was treated less favorably than similarly situated employees. Taking all Hood's allegations as true and drawing reasonable inferences in

his favor, he has not alleged facts raising an inference that he was treated less favorably because of his race.

Even assuming that Hood meets the pleading requirements for discriminatory treatment, he fails to adequately plead causation.  Hood correctly cites to caselaw holding that, "[a]t the prima facie [stage], a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action."  *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).  This legal principle is inapplicable here.  Hood's race discrimination and retaliation claims are unrelated to a protected activity—showing up to work without a suit jacket or leaving at 2:15 p.m. are not protected activities.  But even if they were protected activities, temporal proximity does not automatically establish causation.  The court must still assess whether the claim is plausible on its face.  The fact that Hood was fired shortly after an incident that he viewed as discriminatory does not plausibly show causation.  Taking all reasonable inferences in Hood's favor, the Second Amended Complaint shows, at best, that Hood and Gulf Capital management did not work well together.  That is not actionable race discrimination.

Hood runs into many of these same issues with his disability discrimination and retaliation claims.  To state a prima facie case of discrimination under the Americans with Disabilities Act, Hood must allege that: (1) he has a qualifying disability; (2) he was denied benefits or otherwise discriminated against; and (3) the discrimination was because of his disability.  *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). To show discrimination on the basis of a disability, Hood must allege facts showing either disparate treatment—that the defendant treated him more harshly than a similarly situated but non-disabled person—or that the defendant failed reasonably to accommodate his disability.

9

To state a claim for retaliation, Hood must allege facts showing that: (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017). Retaliation claims under the TCHRA and ADA are guided by the same analysis that applies to claims of retaliation under Title VII. *See Martin*, 65 F. Supp. 2d at 554 (TCHRA); *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 F. App'x 308, 312 (5th Cir. 2016) (ADA).

The court granted the motions to dismiss the First Amended Complaint as to disability discrimination and retaliation because Hood did not allege that Gulf Capital failed to accommodate him as requested, denied him benefits, or otherwise discriminated against him on the basis of an alleged disability. The Second Amended Complaint fares no better. Hood alleges that he disclosed his qualifying disabilities. Hood alleges that he intended to file for FMLA leave and to be able to telecommute to accommodate his disabilities. But Hood fails to allege that the Bank denied him reasonable accommodations. Hood did work from home on August 18, 2021, and apparently returned voluntarily to the office the next day.

The closest Hood gets in the Second Amended Complaint to stating a claim is the temporal proximity argument. Although Hood can show a protected activity for the disability discrimination claim (requesting an accommodation), temporal proximity does not establish a prima facie case here because Hood was granted the accommodation he sought. Hood was then asked, in a meeting with a human resources representative, what accommodations he would need. Hood's response was to accuse his employer of fraud. Hood has not plausibly alleged that the request for an accommodation is the reason he was fired.

As to the Insperity Defendants, the court previously dismissed those claims because Hood failed to allege plausible bases of a joint-employment relationship between Gulf Capital and the Insperity Defendants. *See Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 929 (5th Cir. 2021) ("The right to control the employee's conduct is the most important component of determining a joint employer. When examining the control component, we focus on the right to hire and fire, the right to supervise, and the right to set the employee's work schedule."). Hood's Second Amended Complaint does not cure this defect. And even if it did, Hood still fails to state a claim against the Insperity Defendants for the same reasons he fails to state a claim against Gulf Capital.

The motions to dismiss are granted and all claims against all defendants are dismissed with prejudice. The last time the court granted the motions to dismiss, it did so without prejudice as to the claims against Gulf Capital and the Insperity Defendants, giving Hood leave to file an amended complaint. But this time is different.

Hood filed a motion for leave to file a Third Amended Complaint, and in support of his motion, Hood argues that he should be able to file an amended complaint with the aid of counsel. (Docket Entry No. 36 ¶¶ 1–2). Hood states that, when he filed his motion in late November 2022, he had "narrowed the fi[eld] of potential lawyers to four that he is currently interviewing for representation." (*Id.* ¶ 2). No attorney has entered an appearance on behalf of Hood since the motion was filed.

But, more importantly, amendment would be futile. The court has considered the proffered Third Amended Complaint. This pleading still does not cure the pleading defects outlined above, which are the same pleading defects that the court outlined the first time it dismissed Hood's claims. Hood has been given multiple opportunities to amend his complaint. He has laid out in

11

comprehensive fashion the factual basis on which he rests his claims. The court has evaluated the facts pleaded and found that they do not state a claim for relief. While the court has taken care to offer the solicitude owed to any self-represented litigant, Hood has demonstrated an ability to lay out his allegations in a coherent fashion, identifying with particularity the persons and events giving rise to specific causes of action. The problem is that his pleadings do not state a claim upon which relief can be granted.

The record is clear that Hood genuinely feels aggrieved and unfairly treated. But these feelings do not arise from facts that state a claim under federal anti-discrimination laws. When, as here, the alleged facts that the plaintiff believes to be unfair do not state a legal claim on which relief can be granted, dismissal is appropriate.

### IV.   Conclusion

The court issues the following rulings on the pending motions:

- The Insperity Defendants' motion to dismiss, (Docket Entry No. 30), is granted, with prejudice and without leave to amend because amendment would be futile.

- Gulf Capital's motion to dismiss, (Docket Entry No. 31), is granted, with prejudice and without leave to amend because amendment would be futile.

- Hood's two motions for leave to file a third amended complaint, (Docket Entry Nos. 36, 43), are denied because amendment would be futile.

- The remaining motions, (Docket Entry Nos. 40, 42, 44), are denied as moot.

This case is dismissed with prejudice. Final judgment will be entered separately.

SIGNED on June 6, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge